UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSH STANGER,<br><br>    Plaintiff,<br><br>v.<br><br>SGT. WAY, et al.,<br><br>    Defendants. | Case No. 1:20-cv-00088-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Idaho Department of Corrections Defendants Way, Flores, Perkins,[1] and Crowl's (the "Defendants") Motion for Summary Judgment. Dkt. 20.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court finds good cause to GRANT in PART and DENY in PART Defendants' Motion for Summary Judgment.

---

[1] Stanger names "Officer Parkins" as a defendant but the record illustrates the correct spelling of this defendant's name is "Officer Perkins." *See, e.g.*, Dkt. 20-11, at 4.

## II. BACKGROUND

A. **Factual Background**[2]

Plaintiff Josh Stanger is an Idaho Department of Corrections ("IDOC") inmate incarcerated in the Idaho State Correctional Institution ("ISCI"). Stanger is diabetic and receives regular insulin supplementation to regulate his blood sugar levels. On June 14, 2019, Stanger was moved from Unit 9 to Unit 13. The guards in Unit 13—the Defendants in this action—did not know Stanger was diabetic and did not have information regarding his medical status. Dkt. 20-2, ¶ 2.

On June 15, 2019, Stanger was sitting alone in the dayroom in Unit 13. Upon the command to "cell up," Stanger remained in the dayroom, sitting in a chair. Dkt. 20-11, at 4. Officers Flores and Perkins approached Stanger and repeated the order to go to his cell, but Stanger ignored them. The officers then called for backup. Sergeant Mark Way responded and repeated the command to "cell up." Dkt. 20-3, at 2. Stanger made eye contact with Way, grunted, and looked away. Way reported that "Stanger appeared completely coherent and there was no indication that he was having any type of medical issue." *Id.* However, Stanger alleges he could not respond to Flores, Perkins, or Way because he was having a diabetic episode and was in a confused and incoherent state. Dkt. 12-1, at 3.

After further noncompliance, Way began to restrain Stanger. Members from the Alpha Response Squad were called for assistance. Stanger alleges the officers became

---

[2] The following facts are from the record. The Court notes where such facts are disputed or unsupported.

overly aggressive and hit in him in his side with their fists and knees. Stanger contends that before the Defendants became physical, multiple inmates yelled at staff that Stanger was crashing due to low blood sugar related to his diabetes and that he didn't know what he was doing. Dkt. 12-1, at 4. Defendants deny this, and contend there were no other inmates in the room and that no one said anything to the officers about Stanger's diabetic episode. Dkt. 20-2, ¶ 5. They also maintain that Stanger actively resisted restraint with various methods, including tucking his arms under his chest, rolling, acting as dead weight, and shouting obscenities at Flores. Dkt. 20-11, at 2; Dkt. 20-3, at 2.

After a physical altercation, five officers were ultimately able to secure Stanger with wrist and leg restraints and move him to a different unit in the prison. Dkt. 20-2, ¶ 8. There, Sergeant Brian Crowl conducted an unclothed body search of Stanger, per standard IDOC policy.[3] Stanger alleges that before the search, Crowl violently threw him to the ground, pinned his head and legs, and, in doing so, drove Stanger's wrist and leg restraints into his wrist and legs, causing lasting damage. Dkt 12-1, at 8. Stanger also alleges he suffered permanent damage to his right shoulder and bruises to back and ribs as a result of the initial altercation and of being thrown on the ground by Crowl. *Id.* at 4; Dkt. 25, at 2. Defendants do not respond to Stanger's allegations regarding his injuries.

After the altercation, Stanger was examined by Nurse Dallas Lindsey. Lindsey attested that Stanger was "not lethargic, having slow response time, or acting in a manner

---

[3] A search in the prison context can arise under the Fourth Amendment, the Eighth Amendment, or, in certain situations, both. Here, Stanger has not asserted a Fourth Amendment claim, and Defendants have not briefed such a claim. Thus, Crowl's search of Stanger is not at issue in this case.

MEMORANDUM DECISION AND ORDER - 3

that, in my experience, would usually be common for a diabetic who had a low blood glucose level." Dkt. 20-8, at 3. Lindsey also noted that Stanger "was being fully compliant with security and was alert and oriented to person, place and time." *Id*. at 2. Lindsey reported Stanger was responsive to questions and could follow directions. *Id*.

However, Stanger requested that Lindsey check his blood sugar level. Lindsey did so and found that Stanger's blood glucose level was 48, which was below the optimal range for diabetics of 60–100. *Id*. Lindsey administered glucose and, within 11 minutes, Stanger's blood glucose level was 109. *Id*. at 3. Stanger alleges the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by using excessive force during the altercation. In addition to his excessive force claim, Stanger also alleges the Defendants were deliberately indifferent to his serious medical needs by failing to recognize he was having a diabetic incident and by failing to get him immediate medical treatment.

### B. Procedural Background

Stanger filed a Complaint against the Defendants on February 20, 2020. Dkt. 3. Stanger later filed a motion for leave to amend (Dkt. 12) which was granted in part and denied in part. Dkt. 17. After reviewing Stanger's Amended Complaint, the Court allowed Stanger to proceed with an Eighth Amendment claim for inadequate medical treatment, in addition to his excessive force claim. *Id.*

Defendants answered Stanger's Amended Complaint (Dkt. 18) and subsequently filed the instant Motion for Summary Judgment on March 8, 2021. When Stanger failed to respond by his March 28, 2021 response deadline, Defendants filed a Reply to the Motion

for Summary Judgment on April 29, 2021, arguing that because Stanger had failed to respond to the Motion for Summary Judgment, the facts set forth with the Motion should be considered undisputed. Dkt. 22. Upon reviewing the Motion for Summary Judgment the Court realized Stanger had not, due to clerical error, been sent the Court's standard Notice to pro se litigants. The Court accordingly sent Stanger the standard Notice and extended the deadline for Stanger's response.[4]. Dkt. 23. Stanger then timely filed a response to the Motion for Summary Judgment, Dkt. 25, to which the Defendants replied.[5] Dkt. 26. Stanger subsequently filed an affidavit titled "Amending Denying Plaintiff Medical." Dkt. 27. Stanger included the declarations of four fellow inmates with this filing. Dkt. 27-1. Defendants filed a response, arguing that Stanger's affidavit and supporting declarations constituted an unauthorized sur-Reply and violated local rules. Dkt. 28.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving

---

[4] In *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir.1988), the Ninth Circuit held that prisoners (and other plaintiffs proceeding pro se) must receive fair notice of the requirements of Rule 56. In this Court—as in courts across the nation—this notice is a standard form sent to all pro se litigants (including prisoners) explaining Rule 56 and what they must do when a motion under Rule 56 has been filed.

[5] In its Order extending Stanger's response deadline, the Court also ordered Defendants could file a second reply once Stanger responded.

MEMORANDUM DECISION AND ORDER - 5

party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. DISCUSSION

### A. Procedural Issues

As an initial matter, the Court must address three procedural issues. First, while the Defendants ask the Court to dismiss all of Stanger's claims, their Motion for Summary Judgment only addresses the merits of Stanger's Eighth Amendment claim for inadequate medical treatment. As noted, in its Order granting in part and denying in part Stanger's Motion to Amend, the Court allowed Stanger to proceed on his claim that the Defendants "were placed on notice by other inmates that [Stanger] was having a diabetic episode when [they] first approached him and thought that he was simply being noncompliant with orders." Dkt. 17, at 2–3.

Importantly, Stanger's Amended Complaint also included the excessive force claim

MEMORANDUM DECISION AND ORDER - 6

that he alleged in his original Complaint. *Compare* Dkt. 3 *with* Dkt. 12-1. While, in reviewing the Motion to Amend and Stanger's Amended Complaint, the Court did not allow Stanger to proceed with new claims for failure to train and for (unspecified) Idaho state tort claims, it did not preclude Stanger from also proceeding with his initial claim of excessive force. In fact, the Court had already reviewed this claim in its Initial Review Order (Dkt. 7), and found Stanger had adequately alleged that he was subjected to excessive force in violation of the Eighth Amendment during his altercation with the Defendants. Stanger thus has two claims: one for deliberate indifference to his medical needs and one for excessive force. Although both claims involve Stanger's Eighth Amendment right to be free from cruel and unusual punishment, they are distinct claims.

While Defendants tangentially mention excessive force in their Motion for Summary Judgment, they do not brief the merits of Stanger's excessive force claim, and instead focus solely on whether the Defendants denied Stanger adequate medical care after being placed on notice that he was suffering a diabetic episode. As such, the Defendants' Motion for Summary Judgment is DENIED with respect to Stanger's excessive force claim. However, given the apparent confusion regarding which claims the Court allowed to proceed when it ruled on Stanger's Motion to Amend, the Court will allow the Defendants a brief extension to file a second Motion for Summary Judgment—if they so choose—with respect to Stanger's excessive force claim.

Next, Stanger filed his "Affidavit of Amending Denying Plaintiff Medical" and supporting declarations after the summary judgment briefing closed. Dkt. 27. As this filing contained statements in response to the Defendants' Motion for Summary Judgment, as

MEMORANDUM DECISION AND ORDER - 7

well as affidavits by other inmates, it seems most appropriate to characterize it as a sur-reply. Local Civil Rule 7.1(c) allows a responding party to serve and file a response brief and affidavits within 21 days after service of the moving brief and supporting documents. Absent permission by the Court, neither the District of Idaho's local rules, nor the Federal Rules of Civil Procedure, permit sur-replies. *See*, *e.g.*, *Hill v. England*, 2005 WL 3031136, at *1 (E.D. Calif. 2005). However, the Court is mindful that Stanger is proceeding *pro se*, and, as such, that it must construe the filings and motions liberally. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). While Stanger's sur-Reply is inappropriate, the Court will nevertheless consider it.

Finally, Stanger failed to address the Defendants' assertions of undisputed facts and did not file "a separate statement…of all [disputed] material facts." Dist. Idaho Loc. Civ. R. 7.1(c)(2). Thus, "the Court may consider the uncontested material facts as undisputed for purposes of consideration of the motion [for summary judgement]." Dist. Idaho Loc. Civ. R. 7.1(e)(2). While Stanger did not directly dispute the facts, the Court does assess potentially dispositive disputes Stanger raised in his Reply (Dkt. 25) and sur-Reply (Dkt. 27) to accommodate for Stanger's status as a *pro se* litigant.

### B. Deliberate Indifference to Stanger's Medical Needs

Stanger contends the Defendants denied him medical treatment for his diabetes in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. As this Court previously explained (Dkt. 17), Stanger must show the Defendants were deliberately indifferent to his serious medical needs to succeed on this claim. Deliberate indifference is "more than ordinary lack of due care for the prisoner's interests or safety,"

but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Assuming Stanger did have a serious medical need for treatment for his diabetes at the time of the altercation, Stanger's inadequate medical treatment claim cannot survive absent a showing that the Defendants were aware of this need and deliberately disregarded it. The record illustrates Stanger cannot make this showing.

Stanger was transferred from Unit 13 to Unit 9 the day before the incident. Dkt. 20-3, ¶ 3. There is no evidence that Stanger told Defendants he was having a diabetic episode, or that he had diabetes. Further, at the time of the altercation, the Defendants had no prior experience with, or knowledge of, Stanger and/or his medical history. *Id.* at ¶ 4. Because he was new to the unit, Defendants did not know that Stanger was diabetic. "Staff are not given personal medical information about each inmate and it takes time to learn inmate routes unless the inmates themselves advise staff of particular needs or issues." Dkt. 20-5, at 2. Stanger does not dispute this evidence on summary judgment.

Stanger's actions also did not give the Defendants any indication that he was having a diabetic episode. Stanger responded when Flores and Perkins entered the day room by turning his head. Dkt. 20-2, ¶ 4. He also responded to Way's command to "cell up" by grunting and looking away. Stanger was coherent enough to shout obscenities at Flores, and to actively resist five officers in their attempt to restrain him. *Id.* ¶ 8. Stanger was also walking, speaking, and functioning normally as he was escorted out of the day room. *Id.* ¶ 9. Stanger does not dispute he took such actions, which, significantly, are all atypical of an individual suffering from a diabetic episode. As Nurse Lindsey explained:

MEMORANDUM DECISION AND ORDER - 9

> A diabetic with low blood sugar can sometimes be lethargic or slow to respond when their blood sugar levels are too low, but a diabetic's energy and stamina are not usually able to return to normal under such circumstances until their blood sugar levels are raised to a normal level, usually by taking glucose and/or eating appropriate food. When I observed Mr. Stanger while he was being restrained in Unit 13 and transported by correctional officers to Unit 8, Mr. Stanger was not lethargic, having slow response time, or acting in a manner that, in my experience, would usually be common for a diabetic who had a low blood glucose level.

Dkt. 20-8, ¶ 7. During his examination of Stanger, Nurse Lindsey observed that although Stanger did have low glucose levels, Stanger walked without difficulty, was not lethargic or slow, and was alert and oriented to person, place, and time. *Id*. ¶ 5–6. Thus, although Stanger *did* have low blood sugar,[6] even a trained medical professional did not see any signs to suggest Stanger was suffering a diabetic episode. It follows that the Defendants, who are not medically trained and who did not know that Stanger had diabetes, were not aware of, and did not deliberately disregard, Stanger's need for medical treatment for his low blood sugar.

In his Amended Complaint and on summary judgment, Stanger alleges his fellow inmates witnessed the altercation through the windows of their cells and "yelled at staff that [Stanger] was crashing from low sugar related to his diabetes and that he didn't know what he was doing." Dkt. 12-1, at 4; Dkt. 27, at 2. Stanger claims Flores responded, "it is

---

[6] Defendants argue Stanger was not in a diabetic state and was instead purposefully disobeying orders. Dkt. 20-1, at 6. Given Stanger's confirmed low blood sugar, whether or not Stanger was suffering a diabetic episode is a genuine issue of disputed material fact. Despite this, Stanger's medical care claim fails on summary judgment because it is undisputed that Defendants were not aware Stanger was diabetic or that he was suffering a diabetic episode, and thus could not consciously disregard Stanger's need for glucose supplementation. Stanger's inability to establish Defendants were deliberately indifferent to his serious medical need is fatal to his Eighth Amendment medical claim, as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

MEMORANDUM DECISION AND ORDER - 10

not his blood sugar, I know when a diabetic has low blood sugar," and that the Defendants generally "failed to listen to the witness and failed to heed the nature of the situation that they were dealing with a medical emergency/situation[.]" *Id.* To support such allegations, Stanger submitted four declarations from inmates who apparently witnessed the altercation through the windows of their cells.[7] Dkt. 27-1. Although they attest that Stanger was having a diabetic episode at the time of the altercation, none of the inmates claim they warned the Defendants, either prior to or during the incident, that Stanger was suffering a diabetic episode or that he couldn't respond to commands because he had low blood sugar. *Id.*

The subjective component of deliberate indifference is intended to preclude a finding of deliberate indifference for accidents or inadvertent or even negligent failure to provide medical care. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Hutchinson v. United States*, 838 F.2d 390, 394 (1988); *Farmer*, 511 U.S. at 835 ("ordinary lack of due care" is insufficient to establish deliberate indifference). As such, deliberate indifference entails something more than even gross negligence. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, a deliberate indifference claim against a medical provider requires a showing that the defendant acted

---

[7] On summary judgment, the Defendants contend that no other inmates were in the day room at the time of their altercation with Stanger. The evidence supports this, as still pictures from the video footage of the incident show Stanger was alone in the day room with officers. Dkt. 20-12. However, it appears from the pictures that windowed cells surrounded the day room, and that inmates in such windowed cells could ostensibly view the incident. *Id.*

MEMORANDUM DECISION AND ORDER - 11

with subjective recklessness. *Id.* at 839–40.

As explained above, there is no evidence that Stanger told the Defendants he was diabetic and Defendants were not familiar with Stanger or aware of his medical history at the time of the altercation. Defendants had no reason to suspect, based on Stanger's actions during the altercation, that he was suffering from low blood sugar. In fact, Stanger's active resistance instead suggested that he was not impaired. Nor did any of the inmate witnesses contend they warned the Defendants that Stanger was suffering a diabetic episode prior to or during the incident. Because there is simply no evidence that Defendants were deliberately indifferent to Stanger's serious medical needs, his Eighth Amendment claim for inadequate medical care fails as a matter of law.

///

///

///

## V. ORDER

NOW, therefore IT IS HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment (Dkt. 20) is **GRANTED in PART** and **DENIED in PART**;

    a. It is GRANTED with respect to Stanger's Eighth Amendment medical claim;

    b. It is DENIED with respect to Stanger's Eighth Amendment excessive force claim.

2. If Defendants decide to seek summary judgment on Stanger's excessive force claim, they must file a supplemental Motion for Summary Judgment within three (3) weeks of the date of this Order, with the standard briefing schedule to follow.

DATED: September 21, 2021

David C. Nye
Chief U.S. District Court Judge